Good afternoon, Your Honor. Myra Sun. I represent Mr. Nekeferoff. I would like today, if I could, to begin with the issue of why my client's request for self-representation made three weeks before trial should have been granted. And then I would like to move on to the questions of statutory interpretation and the integration of that issue with the sufficiency of evidence and the instructional issues. And I would like to preserve about three minutes for rebuttal. There are three requirements for the grant of a request to represent oneself at a trial, that the request be unequivocal or not equivocal, that it not be for the purpose of delay, and that the defendant be fully informed, that is, that there be an adequate colloquy under FRERETA to make sure that his waiver of his rights is absolutely voluntary and knowing. First of all, my client did make an unequivocal request to represent himself. His exact words were, I would like either a different attorney or just to represent myself. And respectfully, I see no distinction between that language and the language in United States v. Hernandez, which we cited and both sides understand is a case that matters here. The government speaks of ambiguity in the request, but I would submit that the record as a whole shows that it was not an ambiguous request. It was unambiguous. He had asked to replace counsel before or to represent himself before. And he had been, he had very consistent concerns. He wanted to run this First Amendment defense, and he talked about evidence that he wanted to exclude. Counsel, may I ask from this record, would it be possible to make a finding that the request is made for the purpose of delay? I don't think so. The government begins its discussion of that issue by suggesting that he was being manipulative, that he had previously replaced counsel for this purpose. I don't think the record in fact shows that. Well, if I could cut to the chase, because your time's limited, if you could go right to it. We all know the record. And if you could speak to that, the district court, the chief judge here said that he thought was the fact that your client was playing games. You know, that was part of the record. So do you want to speak to that? Yes, I think that it was because he was asking for a new lawyer. But then the court went right on. The next thing the court did was have its brief colloquy with him. In other words, the court, like the judge, district judge, and Hernandez was treating the two requests separately. And he didn't say about the request for self-representation that it was going to be denied because he'd been manipulative or because he did it for purposes of delay. He didn't say that. He said it was because I don't think that you are qualified to represent yourself. And twice he talked about how he was doing it in your best interests. So that wasn't the reason that the request was denied. Counsel, I have one other question. Can I ask one other question? Yes. Forgive me if I interrupted you. The waiver has to be knowing and intelligent. And in August of 2017, the same judge, the trial court judge, had conducted a competency hearing for this defendant. Right. Right. And there was a concern in the record. There's mentioned a fetal alcohol syndrome and a concern about need to have that kind of a competency hearing. So does that factor into our finding here about our conclusion here about whether the waiver was knowing and intelligent? It doesn't, in part because the district court ultimately found that he was competent. And then the court does have this record of a very extensive forensic colloquy that the magistrate conducted with my client a year before, quite a bit before the competency issue was raised by my client's second counsel. You know, and she... Magistrate Judge McCoy was, that was a year earlier. So it's December to December. But in the August in between, sort of halfway between there, there was the competency hearing, that type of content. And of course, we're all familiar with that much lower bar. But I have a little concern about, that's a sensitive issue. Of course, that record is under seal. I'm a little concerned about, it's clear to me that the district judge had knowledge of all of that history and whether it is appropriate for us to expect that he would necessarily have vocalized all of those findings in open court, given the circumstances. Is that something that's fair for us to consider? I don't, I think the record is actually quite sparse about the reasons for the request for the competency evaluation or the court's findings. This case really turned on, in my view, and you can, and I think it's more important actually to look at what his second counsel said, which is that he keeps bringing up this First Amendment defense. He keeps returning to it. He keeps returning to it. She regarded it as, I think they sometimes use the word, perseverative. It was something that he kept bringing up, even though she kept telling him this is not a defense we can raise. And that is not the kind of competency problem that either bore on his competency to stand trial. It's just someone who, and this happens frequently with defendants, that they want to raise a defense that their lawyer says over and over again, you don't have this defense. So I don't believe the mental competency issue that got raised earlier bore on his competency to represent himself. And the court's colloquy, this court did not conduct a lengthy colloquy with him and made the decision with a very, very brief questioning. So I wouldn't say that those two things actually do mesh. That would be my view. I want to move on, unless there are other questions, to the other issues that I raised relating to the sufficiency of the evidence. We do interpret the statute, and I wish to preserve this issue. I recognize that other circuits have resolved it, that a third party adult's involvement in the commission of the offense is not in the plain text of the statute. It's not contemplated. And that is what we had here. We had the use of interstate commerce means purely to engage in communication with a third party adult. And I will later talk about how there was no persuasion occurring during those conversations. But that is the issue. That is one of the reasons that we believe the evidence is insufficient. The statute doesn't contemplate a third party adult. And that would mean the evidence was insufficient, and indeed the instructions were in error. Counsel, why can't a defendant be guilty under this statute if he has the intent to persuade or entice or coerce the minor, and he just enlists another individual to help him accomplish that end? It seems to me that's all that is really going on here, and I don't understand why you think that's beyond what the statute provides for. Well, because, Your Honor, because, well, I don't, I may not see the evidence the way the court does, but essentially the intent has to be the intent to persuade. I think we all agree on that. And there has to be substantial corroboration of that. And what we have consistently in the tone and the tenor and the pattern of the interaction between my client and this adult Jennifer is somebody who's expressing a want, but not an intent to persuade. And the whole scenario here, and I dwelled on this in my brief, is that she presented herself as someone who was interested in sexually abusing her daughter and that she was already engaged in the grooming. So then what we would look for, and this goes to sufficiency, is his also participating in how to persuade the minor. And if the record is studied very carefully, you will see that he consistently is saying that he doesn't know or what are you going to do? And that is very different than the cases that we cited in which individuals are suggesting to the third party adults that they're communicating with. Well, here's my picture. Here's a picture of my private. But on this son, it seems like what you're arguing now is this very standard sufficiency of the evidence argument as opposed to a statutory interpretation. They're really sort of there. And I understand Judge Watford's question to go to the interpretation of the statute, not necessarily the facts here that would support grooming or coercion through an adult. And I think that that's probably the critical issue is what supports your interpretation of the statute. We know numerous other circuits have not reached the conclusion you're advocating. I didn't see any reference to any history, commentary, anything beyond, you know, we're looking at the plain language of the statute. What is there that says it can't be accomplished through an adult intermediary? I would say, first of all, that the legislative history, and I think both sides agree with this, that the scenario Congress was most concerned with was adult predators essentially reaching out to people who are either reaching out either to actual minors or because it's a proper investigative technique. Adults posing as minors in order to inveigle them into being willing to participate in criminal sexual activity. It's pretty plain that that is what Congress meant by enacting 24-22-B. But if that is what the statute means, then that would mean that it wouldn't be criminal to persuade, coerce, entice a minor through an adult intermediary, even if the minor is well below the age consent. If we're talking about a young child and we're talking about using an adult who has access to that child, your interpretation would say that's not criminal conduct under the statute? Right. What the courts have done to say that it is, is they've sort of evaluated the law of attempt, which requires a substantial corroboration of one's intent to commit the offense of persuasion. And so when a defendant is on the internet communicating with a third party adult, making suggestions for things that she should do, and my whole point with respect to the evidence here is that my client didn't make those suggestions. They often were prompted by the adult, but I think the courts have recognized that they do want, in the case of adult intermediaries, to allow prosecution under 24-22-B. But there has to be an effort to overcome the minor's will, and that is represented by the interaction the defendant has with the adult online. So in other words, if the evidence showed that your client was having the agent who was posing as the mom groom the child for us being molested, that would be criminal under the statute in your view? He would have to intend to persuade the minor by having the adult assist him in grooming. And I don't, again, I don't think that that was the dynamic of the interaction here. No, I understand. Or offer, right, or offer the adult money, or those are the different, in McMillan, which is that Seventh Circuit case, talked about these three different scenarios. One is offering money, or in other words, doing a transaction. And then some of the cases involve interaction with the third party adult as well as the minor. Counsel, did you want to save any time? I did, I'm sorry. Yes. That's all right. All right, we'll hear from opposing counsel now. Okay. Thank you, Your Honor. Thank you, Your Honor. May it please the court, my name is Kyle Reardon. I'm an assistant U.S. attorney here in the District of Alaska. I will structure my response in the same order that Ms. Sun presented her arguments and discuss the self-representation issue first and foremost. Counsel, excuse me, counsel, could you keep your voice up? It's a little hard for me to hear you. Yes, Your Honor, thank you. Sure. What I said when I introduced myself was I will structure my argument in the same order that Ms. Sun presented hers and discuss the representation issue first. And I think that, as I articulated in my brief, the District Court's findings as it concerned Mr. Nikiforov's motives for wanting to represent himself and its findings as it concerned his knowing involuntary waiver of the right to counsel were proper in this case. The District Court was well aware of the entire record, which included Judge McCoy's and the magistrate judge's findings a year prior. As Your Honor, Judge Kristen has already pointed out, the competency hearing in August and then the request for either new counsel or represent himself in December, approximately 12 or 13 months after that request in front of the magistrate judge. The District Court was also aware of what it termed the bar beef or the defendant's pattern of approaching a trial date and then filing this motion. And given all of those facts and given the record before, the District Court's findings were not clearly erroneous and its conclusion that the defendant was not making a knowing and intelligent waiver was the proper one in this case. As of the second hearing, how far out was the trial date, please? Posting counsel said three weeks, is that right? I believe it was two and a half to three weeks, Yes, Your Honor. And then there were, in the intervening time between that, we'll just assume three week interval, there were two additional hearings. There was a hearing approximately 10 days before the trial date, and then there was a pretrial conference. And indeed, at the hearing approximately 10 days before, the defendant again raised his complaints about his attorney, but did not re-raise his motion to proceed pro se, nor did he do it at the pretrial conference, which was a step that the District Court had expressly advised him he could do, and he could seek reconsideration. And so, in addition to making the correct findings initially, the government also submits, the defendant has waived this argument, given those additional opportunities that he had to present the argument. Mr. Rigdon, I noted that argument in your brief, but I didn't see any authority to support it. Even if the district judge said, you know, I'm going to deny your motion, now you can raise it again, and he didn't choose to, why is that a waiver? What says that he has to raise it again? It's a structural error, right, if it were error, and he raised it, and his request was denied, which would seem to preserve his self-representation request. So, what authority supports the notion that it was waived because he was told he could do it again, and he didn't? The authority is the Second Circuit case that I cite, Wilson v. Walker, it's a 204-F333. In addition, there are the cases of Arlt, A-R-L-T, and Hernandez, which both find that abandonment did not occur under different circumstances that we have here. So, within those cases, there is an implicit acknowledgment by the Ninth Circuit of an abandoned argument as it relates to the request to proceed post-act. Counsel, I think you've misread Hernandez. Hernandez squarely rejected the very argument you presented to us. There aren't different facts. With all due respect, Your Honor, I attempt to point out what I believe to be different facts within that case and the distinction between that case and this one. Oh, I know, but the facts were identical in our case, and Hernandez went on to say it wouldn't even matter. That there's no requirement that once a defendant makes a non-equivocal request that he renew it, even if given the opportunity. The court said that basically as a get-on-the-money holding. So, I think your reliance on the Second Circuit case is foreclosed by Your Honor. Understood, Your Honor. Again, I try to present to the court what I believe is a factual distinction. I'm saying I think you've misread the case. You need to keep reading past the portion that you're focused on, and you'll see that the court goes on to say, but that wouldn't even, even the factual distinction I think you're trying to draw would not matter because there's no requirement that a defendant reassert his right to represent himself. Can I ask you, can I ask you, what is it that you think occurred at the competency hearing that informed the District Court's decision here? I don't think there was anything in particular. It just, the court was aware of concerns about Mr. McGraw's competency. And so, even though, as Ms. Sun pointed out, he was ultimately found to be competent, there was enough concern to have the hearing. And then there was his persistence with raising this First Amendment argument that both of his prior, well, his prior counsel and his current counsel had told him was an argument that was not proper to bring before the court. And so, I don't mean to imply that there was something said or done at the competency hearing, which would have caused the judge to say he is not making a knowing and intelligent waiver. What I'm trying to express to the court is there is an entire record here, which includes the competency hearing, which gave the court pause and gave it a basis to think the defendant's request was not knowing and intelligent. Well, the reason I ask that question is that, tell me if I've got the record wrong. I thought the hearing before Judge McCoy involved a much more robust rhetoric colloquy with the defendant. And at the conclusion of that hearing, Judge McCoy, I thought, found that he had made a knowing and intelligent waiver. The problem was that, of course, he quite explicitly equivocated at the end. And that was the basis for denying his request then. So then, when we get to the district court judge here, it seems to me that you're saying that, well, he was aware of the entire record. Well, the entire record included a very robust rhetoric colloquy and an explicit finding by another judicial officer that this defendant was capable of making a knowing and intelligent waiver. So that's why I wondered if the intervening competency hearing changed anything. And it sounds like you agree that it didn't. I agree that it did not, other than to provide the district court with additional information about Mr. McIntosh. But, again, as Ms. Sun points out, the district court at that intervening competency hearing did conclude that the defendant was confident and able to stand trial. But, again, as I said initially, we have now three hearings in which the defendant has presented himself to a judge of some sort, the magistrate judge initially and then the district court in the later two. We have a pattern of making a motion for new counsel or for self-representation in the weeks before trial. And we have a district court in December of 2017 who was aware of all of those facts. And, again, in the government's view, made the proper findings as it concerned both the knowing and intelligent waiver as well as the attempt to delay. There was no finding by the judge that the request to represent himself was made for the purpose of delay. And I think if the judge had tried to make that finding, it would be clearly erroneous because the record shows that the purpose of the request was to assert this frivolous First Amendment defense. It had nothing to do with trying to delay the start of trial. But the timing at which the delay was made, I don't believe that it needs to be, Your Honor, we're expressing making this motion in order to get a continuance to trial. Who is repeating a pattern that he had done a year earlier. And the district court in the hearing that it had immediately prior to the foretocol, if we specifically came out and noted the pattern that the defendant had of filing the bar complaint and seeking to delay. And so there is a, again, this longer record of the defendant's actions and patterns as it concerned this particular request to proceed pro se. But what's your response to your opponent's argument that, in fact, the district court treated the two requests separately? Because I agree with you that the request for new counsel could well have been deemed to have been a matter of playing games or trying to delay the start of the trial. But with respect to the request to represent himself, he wasn't asking for, he wasn't saying I need more time if I'm going to be granted the right to represent myself. He wasn't saying I need the trial moved off. It sounded as though he was prepared to go forward with the scheduled trial date. I'm not sure the record is clear or was sufficiently developed to say what his intent was with regards to the timing. I think, given that we're two and a half to three weeks before trial, it is not unreasonable for the district court to assume that the defendant would need and would request additional time to proceed the trial. That is not an irrational or illogical. I don't think we could make a finding that the defendant wants to delay the trial without at least inquiring about that counsel. That would not, I don't think we could make a finding on this record that the defendant was going to need more time because the judge, because his colloquy was so abrupt and brief, never explored the issue. Well, again, I think we have the judge's reference to Mr. DeFrost's pattern. We have his familiarity with the proceedings in front of Judge McCoy, which include, as your honor pointed out, the finding that his motion earlier was for the purpose of delay. And we have a district court judge who, taking all of those facts into consideration, rightly viewed that this was also for delay and this waiver was also not knowing and intelligent and ruled accordingly in the government's view. As it concerns the statutory interpretation, the government submits to your honors that the 10 other circuits who have looked at this issue have all ruled properly. That the words persuade, induce, entice, and coerce do rightly encompass contact between the defendant and the victim that occurs through a third party intermediary. And to address some of the factual issues or evidentiary issues that Ms. Sun spoke of in her analysis of both the statute as well as its application to the facts of this case, I disagree with her conclusion. And I believe the record is more than sufficient to show, regardless of what interpretation this court would want to apply to 2422B, whether it shows the more open interpretation of the simply communicating with an adult is sufficient, or whether it goes like the D.C. Circuit in Haidt to do a more restrictive interpretation which required some intent to pass information on to the minor. Under any interpretation this court draws, the defendant is guilty of the offense charged. And I would direct the court's attention specifically to a couple of the text messages that are in the record. Specifically, if the court looks to a text message on July 8th, which is found in the record of the excerpt of record 1141, there's a discussion of the defendant wanting to have sexual contact with the victim. There's a discussion of Jennifer, the undercover adult who was having sexual contact with the victim. And the defendant's response is, quote, wow, she will be used to licking when I get her. And so it's clear from a text like that, as well as a text at 1142 of the record in which the defendant instructs Jennifer to perform oral sex on the victim. It's clear from a text at 1100 of the record, awesome, so I can lick her, after a discussion of Mr. Nikiforov telling Jennifer to do things to the child. Even if the court were to require some pass through from the intermediary to the victim, Mr. Nikiforov has done precisely that. He is assisting Jennifer and instructing Jennifer in the grooming activities that he wants her to perform. And ultimately, he culminates that with the text message on the day of his arrest, in which he says simply, prepare her. Prepare her for what? Prepare her for all of the things that they had discussed in the six weeks prior about what he intended to do to the child. So the evidence in this case, when it's viewed in the light most favorable to the non-moving party, that is to the United States, is clearly supportive of the jury's verdict. That the defendant did intend to influence, persuade, to induce and entice the minor child in this case, the eight-year-old girl with whom he wanted to have sex. I am, in my last minute, there is one issue that I wanted to address with the court as it concerned the jury instructions. Specifically, the appellant's motion discusses jury instructions 18 and 20. And in the court's analysis of this issue, I would ask the court to look at all of the instructions in this case. Specifically, 20, 22, and 27. And the defendant's argument with regards to the nature of the interstate commerce communications and the need to direct those communications at the minor. A full examination of the instructions to include those, again, in 20, 22, and 27, will detail that the court did in fact advise the jury that there do need to be instructions. And those intents to, I'm sorry, there do need to be communications with the minor. And those are clearly articulated in those instructions. And so if there are no additional questions from your honors, I will submit on my brief. Thank you. Thank you, counsel. Thank you. I don't know how long I have, but I simply want to talk briefly about a spectrum that I see in terms of the sufficiency of evidence. We have at the one hand, the D.C. Circuit case of United States versus Nitschke and Hite. And Nitschke is a case that is much more like this one. And that is a case where, oddly enough, the district court did grant a pretrial motion to dismiss because it viewed the evidence as insufficient as it was. And that has to do with the fact that where the scenario presented to a defendant is that of a minor who has already been groomed. There is less, there's automatically going to be less evidence needed of a defendant's intent to persuade because he perceives there has been no need to persuade. And the quote that Mr. Reardon just gave you about what she will already be used to is evidence that he did not view himself as having to persuade. And I would also note that the closing argument counsel made was heavily weighted toward his intent to commit the offense. And I can't do anything about the record on that. It is clear that he had this interest. But whether this is a case in which he was going to use the internet to persuade a minor into criminal sexual activity, there is no evidence of that. His contacts with the adult were not of that kind. And I'll submit on that. All right, thank you. If there's nothing further from either one of my colleagues, then we'll go ahead and, is that right? Yep, looks like that's right. I want to thank both of you for your arguments, and we'll go ahead and take this case under advisement. And that's the only argument we have today, so we'll be off record. Hear ye, hear ye. All persons having had business with the Honorable the United States Court of Appeals for the Ninth Circuit will now depart for this court for this session now stands adjourned.
judges: Christen, Watford, Bade